## Case No. 13,310.

### The STARLIGHT.

### [1 Hask. 517.] [1]

### District Court, D. Maine. Feb., 1874.

PLEADING IN ADMIRALTY—ALLEGATIONS OF LIBEL — EFFECT OF FAILURE TO DENY — EVIDENCE — COLLISION—SHORTENING SAIL—RIGHT OF WAY.

1. In causes of collision, the charge in a libel that one vessel was close-hauled on the starboard tack and the other on the port tack with the wind free, is to be taken as true, when the answer in general terms avers that the latter vessel was not in such a position as required her to avoid the former.

2. In admiralty, all allegations in the libel not specifically denied are admitted.

3. Such evidence only is admissible as pertains to the express allegations in the libel or answer.

4. A vessel at sea in the night, that comes into the wind for the purpose of shortening sail, and thereby becomes unmanageable, not having first made a careful survey of the sea to discover approaching vessels, is at fault, and in case of collision with a vessel having the right of way, is accountable for damages.

5. A vessel on the starboard tack, close-hauled, is bound to keep her course until danger is imminent, and then she has a right to presume that an approaching vessel on the port tack will avoid her.

6. Negligence, by a vessel having the right of way, in not seasonably discovering an approaching vessel, in case of collision between them, will not charge the former with fault, unless such negligence contributed to the collision.

In admiralty. Libel in rem by a vessel close-hauled upon the starboard tack for damages sustained by collision with a vessel on the port tack with the wind free. Cause heard on libel, claim, answer and proof.

A. A. Strout and John C. Dodge, for libellant.

William Henry Clifford, for claimants.

FOX, District Judge. This action is instituted in behalf of the owners and crew of the schooner Thomas Fitch of New London, Conn., to recover damages sustained by

1 [Reported by Thomas Hawes Haskell, Esq., and here reprinted by permission.]

a collision with the schooner Starlight, on the morning of the fourteenth of Nov. last, between three and four o'clock, about twenty miles southerly from Cape Henlopen. The Thomas Fitch is of the burden of eighty-one tons, and was on her voyage from New London to Tangiers in ballast for oysters. The Starlight is three hundred and thirty tons, was loaded with coal and bound from Georgetown to Portland. The wind it is agreed, was about N. W. by W. blowing heavily, but not a gale; there were some clouds overhead, but it was generally clear and dark and without haze; the fore-rigging, bulkwarks and stanchions of the Thomas Fitch on her port side were carried away, and her crew at the time abandoned her, going on board the Starlight, and she was afterwards picked up, taken into Wilmington and there libelled for salvage. In the present case, the libel alleges that the Thomas Fitch was close-hauled on the starboard tack, heading about W. S. W. under close reefed mainsail and jib, making not more than one and one half knots per hour, with the proper regulation lights burning.

The answer states the course of the Thomas Fitch as being S. W. by W. and does not deny that her lights were in position and burning, nor the other allegations above recited from the libel. These must, therefore, be taken as conceded by the answer; and the evidence given by the crew of the Starlight also establishes the fact that the lights of the Thomas Fitch were in compliance with the requirements of the act of congress upon this subject. The answer gives the course of the Thomas Fitch as one point more free than that stated in the libel; but the testimony from those on board of her sustains the allegations of the libel, and the difference of one point only is so slight, that from the other admissions in the answer, and all the other testimony in the cause, the court is satisfied, that at the time alleged, the Thomas Fitch was sailing close-hauled on the starboard tack.

The averment in the fourth article in the libel is, "that when the Starlight was first seen from the Thomas Fitch, she was heading about N. E. by N. having the wind free, and was coming directly towards the Thomas Fitch, on the port bow. She had no lights set at the time, and was not, therefore, seen until quite near." The answer asserts that the lights of the Starlight were in their proper position and burning brightly; but as to the course of the Starlight the answer is not directly responsive to the fourth article in the libel, and does not deny that she had the wind free, and was coming directly towards the Thomas Fitch.

The answer avers "that the captain took the wheel and ordered the man forward to inspect the lights, and call the watch to furl the flying-jib and reef the mainsail, and that in all respects, said order was a proper and necessary one at the time; that immediately

after the men had completed the furling of the flying-jib, and before the reef had been taken in the mainsail of the Starlight, the Thomas Fitch, sailing on a S. W. by W. course, ran into the jib-boom of the Starlight. It charges that the collision was caused by the carelessness and negligence of the Thomas Fitch, and not by any want of management of the Starlight; that at the time and before the occurrence of said collision, the Starlight was not in such position as required her to avoid the Thomas Fitch, but on the contrary, it was the duty of the Fitch to have avoided and gone clear of the Starlight."

In these extracts from the answer, the court is unable to discover any denial of the charge in the fourth article of the libel "that the Starlight's course was about N. E. by N. with a free wind coming directly towards the Thomas Fitch on her port bow."

There is nothing whatever stated in the answer as to the Starlight's course, or whether she had a free wind or not. The court does find that it is alleged in the answer, that the flying-jib of the Starlight was furled, and that the men were called to reef the mainsail; but it is not anywhere averred that in order to accomplish these movements, her course had been changed a single point, or that she had been thrown up into the wind, or that she had not been pursuing a course N. E. by N. It is stated, near the close of the answer, "that the Starlight was not in such a position as required her to avoid the Thomas Fitch;" but as it is charged in the libel that the Thomas Fitch was close-hauled on her starboard tack, and the Starlight was on her port tack with the wind free, the general denial that her position was not such as required her to avoid the Thomas Fitch, without in any way or manner setting forth what position she was in, or what excuse she had for not avoiding a vessel close-hauled on the starboard tack, is not sufficient, and does not directly meet and answer the charges found in the libel.

By the twenty-seventh of the admiralty rules, it is required "that the answer of the defendant to the allegations in the libel shall be full, explicit, and distinct, to each separate article and separate allegation in the same order as numbered in the libel;" and the rule in admiralty is substantially as in equity, that what is alleged on the one side and not denied on the other, is to be taken as true; and evidence is not admissible in a cause, except such as relates to the express allegations on the one side or the other.

In the case of The William Harris [Case No. 17,695], Judge Ware states the practice of the court to be that if a party relies upon an objection, "he should put the question of fact in issue by a dilatory plea, * * * or by a distinct denial of the averment in the libel, by a counter allegation in his answer. As he has done neither one nor the other, the fact must be taken as admitted; no evidence can properly be received to contradict it, because the proof must be confined to the matters in issue. The court cannot travel out of the record to decide questions which the parties have not submitted to it, and nothing is submitted to its determination, but what is distinctly alleged on one side and contradicted on the other. It is true that courts of admiralty are not restrained by the strict technical rules of pleading, which prevail at common law; but it is not less true, in all courts, that the matters in controversy must be distinctly propounded, and each party must set forth by plain and precise allegations, the grounds on which he asks for the judgment of the court in his favor, as well to disclose to the adverse party the points to which he must direct his proof, as to enable the court to see what is in controversy between them."

In the opinion of the court, the answer of the claimants is not full, explicit, and distinct, to the allegations in the libel, and does not present a full defense to the case as made by the libel. When the cause was opened at the hearing, upon the reading of the answer by the proctor for the claimants, the court was impressed by these objections to it, and frankly stated them to the counsel, and also the legal effect resulting therefrom, as the answer then was. No request, however, was made for leave to change or amend the answer, and the cause was allowed to proceed to hearing and argument upon the pleadings as they were originally presented, and upon these pleadings the court is of opinion, that the allegations of the libel present a valid, legal cause of action against the Starlight, to which no satisfactory defense is found in the answer of the claimants.

The cause was not staid on this objection, but the hearing proceeded. Four of the crew of the Thomas Fitch and two from the Starlight were examined in court. The depositions of three of the Starlight's crew had been previously taken, and the case was fully heard upon its merits. The court has thus been fully advised of the defense intended to be made, and of the evidence in its support. The claimants insist, that previous to the collision, the Starlight was thrown into the wind for the purpose of taking in the flying-jib and reefing the mainsail, and at the time of the collision, was head to the wind without headway. To this pretension, two answers may be made, either of which is satisfactory.

First: Under the circumstances such a movement was imprudent and should not have taken place.

The libel avers, that the Thomas Fitch had her lights burning, and this is not denied in the answer. From the testimony of nearly all on board the Starlight, it is clearly proved that they saw the lights of the Thomas Fitch at a very considerable distance. No objection is made to the character of these

lights, or that they were not in compliance with the regulations prescribed by congress; and they require "that the lights shall be of such a character, as to be visible on a dark night with a clear atmosphere, at a distance of at least two miles." Such was the night in question, and the lights of the Thomas Fitch should have been seen at about that distance. Why were they not sooner seen from the Starlight? It is stated by a number of the witnesses from her, that before her flying-jib was hauled down and furled, they looked about to discover if any vessels were in sight, and none were visible. Are these statements as to their examination to be depended upon? The court cannot rely upon them, as it is not disputed that the Thomas Fitch was then within less than a mile of the Starlight, and it being conceded that her lights could be seen at the distance of two miles, a competent, attentive lookout must necessarily have perceived the lights of the Thomas Fitch at the distance she then was.

The lights were not seen by reason of an insufficient lookout. If they had been seen, and the vessel discovered coming towards the Starlight close-hauled on the starboard tack, it was the duty of the Starlight, for the time being, to hold her course, and not to throw herself into the wind and become unmanageable. Before such a proceeding is adopted, all proper precautions should be observed, and a careful survey had of the sea, to discover whether other vessels may be exposed to danger by such movements; and she is to be held accountable, if by want of proper precautions, a collision ensued with a vessel coming down upon her, entitled to the right of way.

Second: The burden is upon the claimant to establish the condition of the Starlight and satisfy the court that she was in the wind without motion or control, and this he fails to do. That the original course of the Starlight was N. E. by N. is charged in the libel and not denied in the answer, and is therefore to be taken as truly stated. This was within eight points of the wind, so that she was not then close-hauled, but had the wind two points free. If the master concluded to furl his flying-jib, it is probable that he would let her come up somewhat nearer the wind, so that the sail would shiver and be more easily furled; but it would not be necessary for that purpose to bring her head into the wind; and while some of the witnesses from the Starlight do swear that she was in that position, the master gives her course as more than four points off. The Thomas Fitch was first discovered by the man at the wheel, and not by the lookout or any one forward, and at that time the furling of the flying jib was not completed. The seamen afterwards came aft to assist in reefing the mainsail, but nothing was done to accomplish that purpose; the peak, even, had not been lowered, but everything aft

was in proper position for resuming her course; the crew were watching the movements of the Thomas Fitch, and the court has no doubt, that the Starlight might with perfect ease have been put upon her original course. Most of her crew do testify that her sails at this time were all shivering in the wind, without headway on the vessel, and that she could not have resumed her course; but the court is not satisfied with this statement, for the following reasons: 1st. Preparations for reefing the mainsail had not progressed as far as was necessary to throw her into the wind; up to that time all that had been done, was to furl the flying jib. 2d. The court is of opinion, that the position of the two vessels at the time of collision demonstrates that the Starlight was then under some headway, though probably, not to the extent claimed by the libellant. The master and mate of the Starlight testified at the hearing, that the Thomas Fitch ran into the Starlight striking with her jib-boom the Starlight's jib-boom, so that it was broken off at the cap, it being a stick of fourteen inches diameter, and that at the same time her bobstays were carried away with it, and the Thomas Fitch swung alongside to the leeward of the Starlight. Neither of these officers were forward at the moment of the collision. Two of the crew of the Starlight in their depositions, which were taken before the hearing, give us a very different version of the way the two vessels came in contact. They were aft at the time, but they testify that when they got forward, they found the bow-sprit of the Starlight ranging diagonally across the bow of the Thomas Fitch, between her foremast and jib-stay, with the jib-boom of the Starlight broken and hanging down. Mulford, another of the Starlight's crew, states in his deposition, that "when the vessels came together the head rigging of the Thomas Fitch carried our jib-boom away." The testimony of all who were examined from the Thomas Fitch sustains the version of the two hands from the Starlight, that this vessel struck the Thomas Fitch forward, and the bowsprit of the Starlight was found just forward of the foremast of the Thomas Fitch, with the broken jib-boom attached thereto; that when the two vessels came together, the shock was so violent that two of the crew of the Thomas Fitch were thrown down; that the Starlight's jib-boom was probably broken by striking the foremast of the Thomas Fitch, and that neither the jib-boom or any of the head gear of the Thomas Fitch were broken or displaced. If the collision did thus occur, as claimed in behalf of the Thomas Fitch, and as the court is inclined to believe was the case, it is certain that the Starlight was not dead in the water, but was under considerable headway at the time.

The answer also sustains this view, as it does not claim that the Starlight was at the time up in the wind, motionless and unman-

ageable, while it does assert, that the flying jib had been furled, and that they were intending to reef the mainsail; it does not contain the other averments so very important to be presented as grounds of defense. The omission cannot be deemed to have been accidental, but from the failure to make any amendment must be considered as having been designedly and intentionally so made, in order that the answer might be verified by the oath of the master. This answer was filed some time before the hearing, and must be taken as a correct statement of the condition of things as the master then understood them. The subsequent attempt to change it by testimony can only be ascribed to the necessities of the case as they were developed by the evidence for the libellant.

The court, therefore, cannot but conclude that the Starlight was in a condition to have avoided the collision with reasonable care and seamanship.

It is said there was negligence on the part of the Thomas Fitch in not discovering the lights of the Starlight; on this question there is a most serious and direct conflict of testimony; all the witnesses from the Thomas Fitch swearing, without qualification, that the Starlight had no lights either before the collision or after they went on board of her. This statement is as unqualifiedly denied by five witnesses from the Starlight, every one of them swearing that the Starlight, at the time, did have the proper lights burning brightly. Three of the Starlight's crew were not produced before the court, but their testimony was taken by deposition; the court therefore had no opportunity from their appearance, of forming an opinion as to their fairness, credibility, or integrity. The two seamen from the Thomas Fitch, who were examined in court, testified apparently with great fairness, impartiality, and intelligence, and there was nothing in the appearance of either of them, while upon the stand, to cause the court to distrust their statements. Notwithstanding the favorable impression produced upon the mind of the court by these two men, as the number from the Starlight exceeds by one that from the Thomas Fitch, and they are presumed to have better means of knowledge of what took place on board their own vessel, and they have frankly admitted seeing the lights of the Thomas Fitch, the court, though not without great hesitation, is inclined to the opinion, that the balance of the testimony rather preponderates in favor of the Starlight having at the time had the proper lights, and that through the negligence of the lookout of the Thomas Fitch, the Starlight was not sooner discovered by her.

Did this neglect to discover the lights of the Starlight contribute to the collision? What should the Thomas Fitch have done, if the Starlight had been seen by her in due season? The law required her to hold her course when meeting a vessel on the port tack. The language of the 18th article of the sailing rules being as follows: "Where by the above rules, one of the ships is to keep out of the way, the other shall keep her course subject to the qualifications contained in the following article." That article requires due regard to all dangers of navigation, and to any special circumstances which may exist in any particular case, rendering a departure from the rules necessary in order to avoid immediate danger, and provides that nothing in the rules shall exonerate any ship from the consequence of the neglect of any precaution which may be required by the ordinary practice of seamen, or by the special circumstances of the case.

The general rule being, that the Thomas Fitch must hold her course, by the subsequent regulations, was she required to change it? These regulations are verbatim the same as those of Great Britain; and in speaking of them Dr. Lushington in The Orinoco, Holt, Rule of Road. 101, said: "According to my view of that section, it is an exception of persons, who would otherwise be under obligations to obey the previous sections. In omitting so to do, viz: the effect of it would be this; though they were directed to keep their course, yet if there was imminent danger, they would be justified in not keeping their course, provided they had a chance thereby of avoiding the certainty of a collision. But it does not appear to me this is a directory section at all, that tells parties they are to do this or that, or anything else; but they are released from the severe obligation of complying with all the terms of the previous sections, and they are released from that obligation by circumstances which would render obedience to them conducive to peril, while by deviation, they might escape from that peril."

My impression is, that the admiralty courts in America have not generally adopted this view of the article, but have rather held that every vessel is bound to take reasonable precaution, if possible, to avoid a collision; be that as it may, it is certain that the Thomas Fitch was bound to hold her course till danger was imminent; and even then, she had a right to presume that the Starlight would keep out of her way.

It is of the highest importance, that the observance of these regulations should be obligatory as far as possible, and special circumstances requiring a departure can only be found in cases of imminent danger. A vessel close-hauled, on a starboard tack, has a right to hold her course with confidence that other vessels will not approach so near as to endanger her safety; and as is said in Lown. Col. 69: "It is not easy to see how under ordinary circumstances the want of a lookout on board of a vessel close-hauled can contribute to the collision."

The court is of opinion that if the Starlight had been sooner discovered by the Thomas Fitch, the latter vessel ought still to have held her course, and should not have made

any change, and that the negligence of her lookout did not contribute to the collision.

Decree for libellant.

Mr. Wm. L. Putnam, appointed assessor.